Filed 6/27/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DAVID GONZALEZ,<br><br>  Defendant and Appellant. | D082058<br><br><br>(Super. Ct. No. RIF1404885) |

APPEAL from a judgment of the Superior Court of Riverside County, John D. Molloy, Judge.  Sentence vacated and remanded for resentencing.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

After being convicted of first degree murder and sentenced to a term of 75 years to life, David Gonzalez is before us for a third time on appeal after we twice remanded to the trial court to consider certain sentencing issues in

light of newly enacted statutory provisions.[1]  In this appeal, Gonzalez contends that the trial court erred because it applied an improper legal standard in declining to dismiss the firearm enhancement imposed pursuant to Penal Code section 12022.53, subdivision (d),[2] which added a term of 25 years to life to Gonzalez's sentence.  We conclude that the trial court applied an erroneous legal standard in determining whether dismissal of the enhancement would "endanger public safety" (§ 1385, subd. (c)(2)), and it thereby prejudicially abused its discretion.  We accordingly vacate the sentence and remand for resentencing.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The issues presented in this appeal do not require a repetition of the factual detail set forth in our first opinion, and we accordingly present a truncated discussion.

A jury found that Gonzalez shot and killed a man in April 2014 by personally using a firearm.  Specifically, the conviction was for first degree murder (§ 187, subd. (a)), with the additional finding that Gonzalez personally and intentionally discharged a firearm in the course of committing the murder (§ 12022.53, subd. (d).)  The trial court subsequently made a true finding regarding Gonzalez's prior serious felony conviction and prior strike (§§ 667, subds. (a), (c), (e)(1), 1170.12, subd. (c)(1)), which was based on Gonzalez's juvenile adjudication for robbery involving personal use of a

---

[1]  (*People v. Lopez* (Feb. 21, 2018, D072636) [nonpub. opn.]; *People v. Gonzalez* (May 1, 2019, D074726) [nonpub. opn.].)  On October 9, 2023, we granted Gonzalez's request to take judicial notice of our prior opinions.

[2]  All subsequent statutory references are to the Penal Code unless otherwise noted.

firearm (§§ 211, 12022.53, subd. (b)). The trial court denied Gonzalez's motion to strike his prior strike and sentenced Gonzalez to prison for an indeterminate term of 75 years to life, which included a term of 50 years to life term for the murder (which included doubling in light of the prior strike), a term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)),[3] and a consecutive determinate term of five years for the prior serious felony conviction (§ 667, subd. (a)(1)).

In deciding Gonzalez's first appeal, we remanded so that the trial court could choose whether or not to dismiss the firearm enhancement (§ 12022.53, subd. (d)) based on the statutory amendment that conferred such discretion as of January 1, 2018 (Stats. 2017, ch. 682, § 2). (*People v. Lopez*, *supra*, D072636.) On remand, the trial court declined to exercise its discretion to dismiss that enhancement.

In his second appeal, Gonzalez sought a remand so that the trial court could apply a statutory amendment that went into effect on January 1, 2019, after he was resentenced. Specifically, Senate Bill No. 1393 (Stats. 2018, ch. 1013 (§§ 1, 2)) amended sections 667 and 1385 to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. We remanded for resentencing in light of Senate Bill No. 1393, with instructions that the trial court consider whether to exercise its discretion to strike or dismiss Gonzalez's five-year enhancement for his prior

---

3    The firearm enhancement in section 12022.53, subdivision (d), provides, "Notwithstanding any other law, a person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to a person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

serious felony conviction. (*People v. Gonzalez* (May 1, 2019, D074726) [nonpub. opn.].)[4]

After multiple continuances during the pandemic, the trial court resentenced Gonzalez on April 7, 2023. By that time, the Legislature had enacted Senate Bill No. 81, effective January 1, 2022 (Stats. 2021, ch. 721 § 1), which amended section 1385 to include subdivision (c). Under subdivision (c)(1), the court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Under subdivision (c)(2), in exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)[5] The statute specifically provides that " 'Endanger public safety' means there is a likelihood that the dismissal of

---

[4]    Gonzalez also argued that the trial court violated his state and federal due process rights by imposing certain fines and assessments without considering his ability to pay. We declined to decide that issue, as Gonzalez would be able to raise it on remand. At the resentencing hearing, the trial court subsequently granted Gonzalez relief based on his inability to pay.

[5]    Case law has disagreed on whether the presence of a mitigating circumstance creates a rebuttable presumption in favor of dismissal, and our Supreme Court has granted review to resolve the issue. (Compare *People v. Walker* (2022) 86 Cal.App.5th 386, 398–399, review granted Mar. 22, 2023, S278309 ["the additional phrase 'great weight' . . . erects a presumption in favor of the dismissal of the enhancement"] with *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894 ["we respectfully decline to follow *Walker* in its more formalistic reading of the provision"].) We need not, and do not, address that issue to resolve this appeal.

4

the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

In advance of the resentencing hearing, Gonzalez filed a sentencing position memorandum. Gonzalez argued that pursuant to section 1385, subdivision (c), the trial court should dismiss (1) the five-year enhancement for his prior serious felony conviction imposed pursuant to section 667, subdivision (a); and (2) the 25-years-to-life firearm enhancement imposed pursuant to section 12022.53, subdivision (d). Gonzalez contended that dismissal of the enhancements was warranted because (1) more than one of the mitigating circumstances identified in subparagraphs (A) to (I) of section 1385, subdivision (c)(2) were present,[6] and (2) dismissal would not "[e]ndanger public safety" within the meaning of section 1385, subdivision (c)(2).[7]

---

[6] Specifically, Gonzalez relied on the following mitigating circumstances set forth in the subparagraphs of section 1385, subdivision (c)(2): subparagraph (B) ["Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed"]; subparagraph (C) ["The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.]"; subparagraph (E) ["The current offense is connected to prior victimization or childhood trauma."]; subparagraph (G) ["The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case."]; and subparagraph (H) ["The enhancement is based on a prior conviction that is over five years old."].

[7] In his sentencing position memorandum, Gonzalez also sought an order striking his prior strike. The trial court declined to grant such relief, and that ruling is not at issue in this appeal. As a result of the trial court's denial of the request to strike the prior strike, the term for the first degree murder conviction remains 50 years to life.

In arguing that dismissal of the enhancements would not endanger public safety, Gonzalez's memorandum contained the following footnote, supported by a citation to *People v. Williams* (2018) 19 Cal.App.5th 1057, 1063–1064 (*Williams*): "In re-sentencing a defendant, and in determining whether he poses an unreasonable risk of danger, the trial court must look to when he would be released if a modification is granted. This applies with even greater force when he is serving a sentence greater than a human life span. As such, the court must consider when the defendant might be released if his sentence is modified, and the consideration of public safety following his release under the modified sentence."

In the People's response, they did not attempt to dispute that at least some of mitigating factors in section 1385, subdivision (c)(2) applied.[8] The People stated, "The real issue is whether or not dismissing the enhancement would endanger public safety. Factually, the People would like the court to consider the facts in this case which do indicate that the defendant is a danger to public safety . . ." The People then went on to discuss the particular circumstances of the murder and Gonzalez's criminal history.

At the resentencing hearing, defense counsel took issue with the People's focus, in their memorandum, on Gonzalez's criminal history and the circumstances of the murder when they argued that dismissing the enhancements would endanger public safety. Defense counsel stated, "The

---

[8]     Although the People did not make the distinction, we note that some of the mitigating circumstances appear to be applicable only to the enhancement for the prior serious felony conviction. (§ 1385, subds. (c)(2)(G) ["The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case."]; (c)(2)(H) ["The enhancement is based on a prior conviction that is over five years old."].)

6

other thing that I would like to repoint out is it appears as though, in assessing Mr. Gonzalez's future dangerousness, the People are looking backwards at his history, which certainly can be done, but as set forth in the *Williams* case, the court specifically said it's a forward-looking inquiry, especially when the defendant would not be immediately released. [¶] So Mr. Gonzalez is obviously going to do a minimum of 25 to life. Regardless of what this Court does, he's not going to be released forthwith or anytime in the near future. And if he is sentenced to—since he is under an indeterminate sentence, a parole board is going to be re-reviewing everything else as well as the governor."

In ruling on whether it would dismiss the 25-years-to-life firearm enhancement, the trial court first explained that if section 1385, subdivision (c) did not exist, it would not exercise its discretion to dismiss the enhancement. "[T]his is a poster child fact pattern for the imposition of the additional time considered by 12022.53. . . . He is the person holding the firearm. He used it to deadly impact. So if we're just considering normal 12022.53(h) discretion, I would not exercise my discretion for his benefit." However, in light of section 1385, subdivision (c), the trial court stated, "So then the next question is under 1385. Do I consider him to be a danger to society?" The trial court asked defense counsel for clarification about how to approach that analysis, leading to the following exchange:

> "THE COURT: . . . And I'm not sure, [defense counsel], how exactly to—I think—I'm not sure that when I'm sentencing and finding someone is a danger that I have to consider each and every charge that I'm sentencing on to say, well, but now it's going to be 75 years before he's out, so in 75 years he's not going to be a danger. [¶] Isn't it—when you're considering the time of sentencing, does he currently at the time of sentencing represent a danger to society? That's how I read the law. [¶] Do you have a case that says I'm wrong about that?

7

"[DEFENSE COUNSEL]:  Your Honor, I believe the Williams case . . . cited in a footnote talks about a forward-looking inquiry whether he's a risk of danger.

"THE COURT:  And this is forward looking. It's from this point forward—

"[DEFENSE COUNSEL]:  Right.

"THE COURT:—based on what I've seen.  And so from this point forward, I would conclude he is a danger.  What I was saying is, I'm not sure that Williams obliges me to say, well, he's already been sentenced to 50 years to life, so the Court has to say in 50 years he's still going to be a danger in order to impose the other enhancements.  I think it's forward looking from today, not forward looking from 50 years from now.

"[DEFENSE COUNSEL]:  Yes, I agree, because the rest of that statement says, 'And when the defendant would be released if the recommendation is granted and defendant is resentenced,' so it's would he be released.

"THE COURT:  Okay.  A tougher one, as I said before, I think presently he does represent a danger to society, and for that reason, while I am mindful of the prohibition set forth in 1385, I do think it is appropriate for the Court to impose an additional 25 years to life for the gun use enhancement for what amounts to now a total aggregate term of 75 years to life . . . ."

The trial court therefore declined to exercise its discretion to dismiss the 25-year-to-life firearm enhancement based on its finding that Gonzalez "presently. . . does represent a danger to society."  It then turned to the five-year enhancement for Gonzalez's prior serious felony conviction, deciding to dismiss that enhancement.  The trial court explained, "I think that at this point, especially given the 75 years to life that I'm imposing, that the [five-

year enhancement] . . . serves no useful purpose, because it is highly unlikely that the gentleman will ever be released . . . ."

Gonzalez appeals from the judgment.

## II.

## DISCUSSION

Gonzalez contends that the trial court erred in its analysis of whether to dismiss the 25-years-to-life firearm enhancement imposed pursuant to section 12022.53 because it misunderstood the inquiry that it was supposed to conduct in determining whether "dismissal of the enhancement would endanger public safety" within the meaning of section 1385, subdivision (c)(2). Gonzalez contends that the trial court erred in focusing on whether he "presently" and "currently" endangered public safety rather than assessing whether, looking forward, public safety would be endangered due to an earlier release from prison (i.e., in 50 years to life rather than in 75 years to life) if the enhancement was dismissed.

A. *Standard of Review*

In reviewing the trial court's determination that dismissal of Gonzalez's firearm enhancement would endanger public safety, we apply an abuse of discretion standard of review. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) As relevant here, "an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard." (*People v. Knoller* (2007) 41 Cal.4th 139, 156 (*Knoller*); see also *Conservatorship of Bower* (2016) 247 Cal.App.4th 495, 506 ["Case law is clear . . . that getting the legal standard wrong means that a subsequent decision becomes *itself* a per se abuse of discretion"].)

9

B.    *Gonzalez Did Not Forfeit His Argument That the Trial Court Applied an Improper Legal Standard*

As an initial matter, we must address the People's argument that Gonzalez has forfeited his appellate challenge because defense counsel, at the resentencing hearing, purportedly "agreed with the trial court's interpretation of section 1385."

The applicable forfeiture rule is set forth in *People v. Scott* (1994) 9 Cal.4th 331, under which "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*Id*. at p. 356.) "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*Id*. at p. 353.)  Further, although not specifically advanced by the People, the doctrine of invited error is also relevant here, as the People contend that defense counsel *agreed* with the trial court's interpretation of section 1385, subdivision (c)(2) that Gonzalez now challenges on appeal.  " 'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.)  However, for the doctrine to apply, it "must be clear that counsel acted for tactical reasons and not out of ignorance or mistake." (*Ibid*.)

Turning to the question of whether Gonzalez has preserved his appellate challenge, it is centrally relevant that, both in the sentencing position memorandum and during the resentencing hearing, defense counsel advocated for the same legal standard that Gonzalez now advances on appeal.  First, the sentencing position memorandum included a footnote, citing *Williams*, *supra*, 19 Cal.App.5th 1057, which Gonzalez continues to

10

rely upon in this appeal. Specifically, the memorandum explained that in assessing whether dismissing the enhancements would endanger public safety, "the trial court must look to when [Gonzalez] would be released if a modification is granted" and focus on the "consideration of public safety following his release." Next, at the resentencing hearing defense counsel cited *Williams* to explain that "it's a forward-looking inquiry, especially when the defendant would not be immediately released." Defense counsel observed that Gonzalez "is obviously going to do a minimum of 25 to life," so that he was "not going to be released forthwith or anytime in the near future," and that, moreover, Gonzalez's release would be contingent on review by the Board of Parole Hearings and the Governor. When, later in the resentencing hearing, the trial court asked for clarification about the proper analysis, defense counsel referred to the sentencing position memorandum's discussion of *Williams*, explaining that it is "a forward-looking inquiry."

The People's forfeiture argument depends on the final part of the exchange between the trial court and defense counsel, which occurred after defense counsel clarified that it is "a forward-looking inquiry." Specifically, the trial court stated, "I think it's forward looking from today, not forward looking from 50 years from now," referring to a date 50 years in the future when Gonzalez might be released from prison if the enhancements were dismissed. Defense counsel, replied, "Yes, I agree, because the rest of that statement says, 'And when the defendant would be released if the recommendation is granted and defendant is resentenced,' so it's would he be released."

Although, as the People point out, during that exchange, defense counsel replied, "Yes, I agree," when the trial court stated the inquiry was "forward looking from today," it is evident, based on the context of the entire

11

exchange, that the trial court and defense counsel misunderstood each other. Defense counsel seems not to have understood that the trial court was saying anything different from what defense counsel had already advocated by citing the *Williams* case, namely that the inquiry focuses on danger to the public at the time of defendant's eventual release. This is shown by defense counsel's final explanation to the trial court, *after* saying "Yes, I agree," that the focus should be on "when the defendant would be released."

In sum, we conclude that defense counsel simply misunderstood the trial court's statement rather than agreeing with it. We accordingly reject the People's contention that defense counsel *agreed* that the trial court should apply the interpretation of section 1385, subdivision (c)(2) that Gonzalez now challenges on appeal. Gonzalez has consistently taken the position that, in assessing whether dismissal of the firearm enhancement would endanger public safety, the focus must be on whether an earlier release date resulting from a dismissal would endanger public safety. As counsel simply made a mistake in stating, "Yes, I agree," the argument is not forfeited; nor does the doctrine of invited error apply.[9]

C.     *The Trial Court Abused Its Discretion by Applying an Erroneous Legal Standard*

Turning to Gonzalez's contention that the trial court erred in its analysis of whether dismissing the 25-years-to-life firearm enhancement

---

[9]     Even were we to determine that forfeiture occurred, we would nevertheless exercise our discretion to consider Gonzalez's appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 fn. 7 ["an appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.' "]; *People v. Williams* (1998) 17 Cal.4th 148, 161 fn. 6 [stating in the context of an error in sentencing that "[a]n appellate court is . . . not prohibited from reaching a question that has not been preserved for review by a party" and "[i]ndeed, it has the authority to do so."].)

would "endanger public safety," we begin with the relevant statutory language. Under section 1385, subdivision (c)(2), the trial court must give great weight to a mitigating circumstance "unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) The Legislature specifically defined "[e]ndanger public safety" to mean "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

As one court has observed, section 1385, subdivision (c)(2) "does not require the trial court to consider any *particular* factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*Mendoza*, *supra*, 88 Cal.App.5th at p. 299, italics added.) The question before us, however, is whether the trial court erred in interpreting the statute in a specific manner. The trial court believed that it was required to decide whether the defendant "currently at the time of sentencing represent[s] a danger to society." Premised on its understanding of the proper inquiry, the trial court imposed the firearm enhancement based on its conclusion that Gonzalez "presently . . . does represent a danger to society."

"The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) " ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result

13

in absurd consequences the Legislature did not intend.' " ' " (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 767–768.)

The plain words of the statute do not support the trial court's singular focus on whether the defendant *currently* poses a danger. Notably, section 1385, subdivision (c)(2) focuses on the danger associated with the dismissal of an enhancement, phrasing the inquiry as whether "*dismissal of the enhancement* would endanger public safety," and whether "there is a likelihood that *the dismissal of the enhancement* would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short time frame might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly. (See *Mendoza, supra*, 88 Cal.App.5th at p. 299 [affirming the trial court's finding of a danger to the public under § 1385, subd. (c)(2) where "dismissal of the enhancement would result in a sentence of less than six years in prison, which would require [the defendant's] immediate release"].) Further, an inquiry into whether public safety will be endangered by the dismissal of an enhancement for a defendant serving a lengthy indeterminate sentence should also take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings (and for murder convictions, by the Governor), who will have the opportunity to assess the defendant's dangerousness at that time. (§§ 3041, 3041.2; Cal. Const., art. V, § 8.) That future review will act as a

safety valve against a release that would endanger the public and is relevant to a trial court's analysis of whether the dismissal of an enhancement imposed on a defendant serving an indeterminate prison term will endanger public safety.[10]

The analysis in *Williams*, *supra*, 19 Cal.App.5th 1057, although arising under a different sentencing statute, supports our interpretation of the plain meaning of section 1385, subdivision (c)(2). In *Williams*, the defendant, who was serving a term of 193 years to life, filed a section 1170.126 petition for resentencing, which directed the trial court to consider "whether a new sentence would result in an unreasonable risk of danger to public safety." (*Williams*, at pp. 1060–1062, quoting § 1170.126, subd. (f).) The defendant represented to the trial court that "if his petition was granted the earliest he could be considered for parole would be in 2039, when he would be 77." (*Id.* at p. 1060.) The trial court relied on the defendant's criminal history and prison disciplinary record to conclude that resentencing the defendant posed an unreasonable risk to public safety, and it accordingly denied his petition. (*Id.* at p. 1061.) On appeal, the defendant argued that "resentencing him would not present a danger to public safety because granting the petition would, at best, give him the possibility of obtaining parole when he was 77," and "resentencing him 'would not threaten public safety because he still would remain imprisoned until his reform and rehabilitation showed that he could be safely released,' which would happen no sooner than 24 years from now and only if the 'parole board found that his release would not pose an unreasonable risk to public safety.' " (*Id.* at p. 1062.)

---

[10]    We do not suggest that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings.

15

*Williams* held that "[t]he trial court's failure to consider when, if ever, defendant would be released if the petition was granted was an abuse of discretion." (*Williams*, *supra*, 19 Cal.App.5th at p. 1064.) As *Williams* explained, "[d]etermining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced. A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her 70's." (*Id*. at p. 1063.) Further, pointing out that the defendant was serving an indeterminate sentence, which required the Board of Parole Hearings to approve his release from prison, *Williams* explained that "[r]esentencing poses significantly less danger to society if it is contingent on a finding at some future date that the defendant no longer poses a threat to society." (*Id*. at pp. 1063–1064.)

We find *Williams*'s discussion to be instructive here because the relevant language of section 1170.126, subdivision (f), which focuses on "whether a new sentence would result in an unreasonable risk of danger to public safety" is similar in design to the language of section 1385, subdivision (c)(2), which focuses on whether "dismissal of the enhancement would endanger public safety." Both provisions direct the trial court to consider the impact to public safety if the defendant was granted sentencing relief. As *Williams* persuasively explains, such a provision requires the trial court to consider, among other things, the date on which the defendant would be released under the revised sentence, and, in the case of an indeterminate

16

sentence, the safety valve that exists due to the review by the Board of Parole Hearings.

The People present two unconvincing arguments in an attempt to defend the trial court's interpretation of section 1385, subdivision (c)(2), neither of which grapple with the plain language of the statute.

First, the People point out that in a death penalty trial, juries must not be instructed that a defendant serving a life sentence might nevertheless be released from prison at some point in the future based on the Governor's commutation because "it invites the jury to consider speculative and impermissible factors in reaching its decision." (*People v. Ramos* (1984) 37 Cal.3d 136, 159.) The People contend that if speculation about future events is not permitted in the context presented in *Ramos*, we should not require the trial court to speculate about a defendant's future dangerousness when applying section 1385, subdivision (c)(2). We reject the argument, which is entirely unmoored from the text of the statute. *Ramos* has no applicability here because we are deciding the very specific question of what the Legislature intended by including particular statutory language in section 1385, subdivision (c)(2). That question has no overlap with the proper scope of issues that a jury may be instructed to consider when deciding whether to return a death verdict.

Next, the People argue that when a defendant like Gonzalez is serving an indeterminate sentence, the Board of Parole Hearings "is best suited to assess [a defendant's] dangerousness once he completes his indeterminate term." According to the People, the trial court should not "usurp the [Board of Parole Hearings'] role by guessing 50 years or more into the future." We find no merit to the People's argument, which once again is unmoored from the statutory language. For one thing, the relief afforded by section 1385,

17

subdivision (c)(2) is also available to defendants sentenced to determinate terms of imprisonment. In those cases, there will be no decision by the Board of Parole Hearings to determine a defendant's future dangerousness that the trial court could "usurp" by considering future dangerousness as part of its section 1385, subdivision (c)(2) analysis. More importantly, the People's argument overlooks that, for defendants sentenced to indeterminate terms, it is easily possible to harmonize the language of section 1385, subdivision (c)(2) with the fact that the Board of Parole Hearings will eventually consider whether public safety would be endangered by defendant's release from prison. Specifically, as *Williams* explains, the trial court should acknowledge the role of the Board of Parole Hearings by taking into account that a reduced sentence will "pose[ ] significantly less danger to society if it is contingent on a finding at some future date that the defendant no longer poses a threat to society." (*Williams*, *supra*, 19 Cal.App.5th at pp. 1063–1064.)

In sum, we conclude that based on the plain language of section 1385, subdivision (c)(2), the trial court erred because it considered only whether Gonzalez *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would "endanger public safety." (§ 1385, subd. (c)(2).) In light of Gonzalez's sentence of 50 years to life for the murder conviction, the trial court also should have considered the date on which Gonzalez could be released if the firearm enhancement was dismissed and the fact that the release would be subject to a review by the Board of Parole Hearings and the Governor. The trial court's application of an erroneous legal standard constitutes an abuse of discretion. (*Knoller*, *supra*, 41 Cal.4th at p. 156.)

D.    *The Error Was Prejudicial*

The People argue that even if the trial court erred in limiting its analysis to Gonzalez's current dangerousness, reversal for resentencing is not warranted because the error was not prejudicial.

The People rely on the principle that when a trial court misapprehends the scope of its sentencing discretion, a remand is not warranted if "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  The People contend that "as the trial court would not exercise its discretion differently if [Gonzalez] were sentenced a fourth time, remand would be futile."

We reject the People's contention because we find no clear indication in the record that the trial court would have declined to dismiss the firearm enhancement if, rather than limiting its inquiry to Gonzalez's current dangerousness, it had analyzed whether public safety would be endangered by the sentence of 50 years to life that would result from dismissing the firearm enhancement.

In making its ruling, the trial court specifically explained, "I think presently [Gonzalez] does represent a danger to society, *and for that reason* . . . I do think it is appropriate for the Court to impose an additional 25 years to life for the gun use enhancement."  (Italics added.)  The trial court gave no indication of how it would rule if it did not limit its inquiry to Gonzalez's current dangerousness.  Indeed, because a sentence of 50 years to life would result in a potential release from prison far into the future when Gonzalez is elderly, and because a review by the Board of Parole Hearings and the Governor will take place before Gonzalez is released, it is conceivable that, if the trial court holds a new sentencing hearing in which it does not

19

limit its inquiry to Gonzalez's current dangerousness, it will decide to exercise its discretion under section 1385, subdivision (c)(2) in a different manner.[11]

We therefore conclude that the trial court's error was prejudicial and requires a remand for resentencing so that the trial court may apply the interpretation of section 1385, subdivision (c)(2) set forth in this opinion. The trial court shall consider, among other factors it finds relevant, whether the reduction of the sentence, from a term of 75 years to life to a term of 50 years to life resulting from a dismissal of the firearm enhancement, would endanger public safety. We express no view on how the trial court should exercise its discretion on remand.

---

[11]    Because we are reversing and remanding for resentencing, we need not, and do not, consider Gonzalez's argument that the trial court should have considered imposing a lesser firearm enhancement.

## DISPOSITION

The sentence is vacated, and this matter is remanded for the trial court to conduct a resentencing proceeding consistent with this opinion.


IRION, Acting P. J.

WE CONCUR:

DO, J.

KELETY, J.